**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


SANDERS MCNEAL                                                    PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:06cv315-HTW-LRA

HOUSTON ENTERPRISES, INC.;
ROBERT HOUSTON; JOE DENSON;
BIG LOTS, INC.; BIG LOTS STORES, INC.;
SAM'S EAST, INC; AND JOHN DOES 1-100                           DEFENDANTS


**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the court are several motions for partial summary judgment submitted

by the plaintiff Sanders McNeal [**Docket Nos. 74, 76 and 78**], seeking to dispose of

the counterclaims filed by the defendants Robert Houston, Houston Enterprises, Inc.,

and Joe Denson.  Also before the court are the motions for summary judgment filed by

Big Lots, Inc., and Houston Enterprises, Inc. [**Docket Nos. 80 and 82**].   Other more

recently filed motions include a supplemental motion for summary judgment by

Houston Enterprises [**Docket No. 97**], accompanied by a motion to be permitted to

submit excess pages [**Docket No. 96**], and a motion by Houston Enterprises seeking

to reopen discovery **[Docket # 100]**.  Finally, on August 7, 2007, Houston Enterprises

moved to continue the trial of this matter which is set for September 4, 2007, **[Docket

# 103]**, because the plaintiff has charged copyright infringement in her complaint, but

has not provided, according to the defendants, sufficient discovery on this issue for

trial to go forward.

## **STATEMENT OF THE CASE**

On May 12, 2006, the plaintiff, Sanders McNeal, ("McNeal"), commenced this lawsuit against Houston Enterprises, Inc., Robert Houston, Joe Denson, Big Lots, and Sam's East, Inc. ("Sam's"), in the Chancery Court of Rankin County, Mississippi. The case was timely removed to this court. McNeal's amended complaint seeks damages based on the alleged infringement of her copyright. McNeal says she is an artist who produces both paintings and prints of those paintings.

This dispute is between the plaintiff Sanders McNeal, a Mississippi artist, and defendants Robert Houston, Joe Denson and Houston Enterprises, Inc.,  Big Lots Stores, Inc., and Big Lots, Inc., and involves an arrangement or agreement between McNeal and Houston Enterprises concerning the marketing of McNeal's artwork. Houston Enterprises, Robert Houston and Joe Denson argue for summary judgment based on an "implied license" which would allow Houston Enterprises to take the course of action it did with regard to the artwork. They ask the court to rule in their favor on McNeal's claims of copyright, trademark, unfair competition and misappropriation of the right of publicity.

The plaintiff McNeal argues in the alternative that either she granted Houston Enterprises no license at all, or, that what ever agreement she had with Houston Enterprises was more narrow in scope than Houston Enterprises contends. The parties have not entered into a written contract regarding any of the issues to be resolved.   Nevertheless, the parties agree that Robert Houston proposed an arrangement to market prints of McNeal's artwork.

2

The parties do not dispute that McNeal provided Houston Enterprises eight items of copyrighted artwork which were to be printed, matted and framed in China. Robert Houston says that Houston Enterprises paid all costs of the project, including expenses related to the shipping, and storage of the prints.  Houston Enterprises says it negotiated with stores such as Sam's East, Inc., and others, and contends that McNeal knew Houston Enterprises would copy and distribute the prints.  Houston Enterprises says it received and began delivering the prints to Sam's East when the finished products were shipped back from China after being matted and framed. Sam's East received and stored approximately 21,000 of these prints at a warehouse. The prints did not sell very well (under 1000) and Sam's attempted to cover its losses by reselling prints in its store to a third party.  Houston Enterprises says that Sam's East refused to buy the remaining 20,000 plus prints in storage, so, Houston Enterprises sold the remaining warehoused prints to a liquidator in Pennsylvania in order to cover its costs.  Houston Enterprises says it did this, without consulting McNeal, because it had costs to recover, because it believed it had permission to use the printed images (not the originals) submitted to it by McNeal for this project, and because it believed it owned the prints submitted for this project.

McNeal says she only agreed to the prints being sold through Sam's East in its stores outside of Mississippi, and did not agree for any other store to have permission to sell the prints.  As fate would have it, several of these prints began to appear at retail stores in Mississippi, including Sam's stores.   When McNeal saw this, she filed this lawsuit for copyright and trademark infringement, and for misappropriation of the

"right of publicity."[1]  All the defendants have moved for summary judgment on these claims, arguing that McNeal's assertions are specious because she granted the defendants an implied licence to the prints in question.

## THE MOTION OF HOUSTON ENTERPRISES FOR SUMMARY JUDGMENT

The motion for summary judgment by Houston Enterprises, also on behalf of Robert Houston and Joe Denson, asserts that McNeal cannot claim copyright infringement if she granted these defendants a license to use and distribute the prints in question.  Moreover, because it paid all the expenses for matting and framing, Houston Enterprises says it owned the prints and could sell them without further approval from McNeal.

McNeal says she did not grant Houston Enterprises a license, contending that her offer of a license was conditioned on her approval of the manner and method of the final sale of the artwork by Sam's East.  McNeal says she did not approve or disapprove of the terms between Sam's East and Houston Enterprises.  Therefore, says McNeal, she granted no license.  McNeal also claims that she told Robert Houston that she would not grant a license for distribution to any discount stores other than Sam's East or to any other retail stores in Mississippi.

---

[1] For instance, the right of publicity claimed by baseball players pertains to the right to prevent rebroadcast of games whose broadcast rights were already owned by the clubs. *Brown v. Ames*, 201 F.3d 654, 659 (5th Cir. 2000).  In *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), the United States Supreme Court said that, "the protection [afforded by state right of publicity laws] provides an economic incentive for [the artist] to make the investment required to produce a performance of interest to the public. The same consideration underlies the patent and copyright laws." *Id.* at 576.

4

## IMPLIED LICENSE

Houston, Denson, and Houston Enterprises all respond that McNeal's actions do not support her contention that no license was granted.  They argue that a license may be implied by the licensor's conduct.  "A nonexclusive implied license need not be evidenced by a writing;  rather, such a license may be implied from conduct or granted orally." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 452 n. 5 (5th Cir. 2003).   An implied license, say the defendants, arises where: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the person (the licensee) who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute [the] work." *Lulirama Ltd., Inc. v. Axcess Broadcast Systems, Inc.*, 128 F.3d 872, 879 (5th Cir. 1997).

Houston, Denson, and Houston Enterprises contend that this is what happened in this case.  Particularly, with regard to the third element, argue Houston, Denson, and Houston Enterprises, "[w]hen the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license." *Id.*, at 879.  Such a license may be implied from conduct or granted orally.  *Carson*, 344 F.3d, at 451 n. 5.

The defendants Robert Houston, Joe Denson, and Houston Enterprises say that Robert Houston called McNeal to discuss the project in question.  Referring to Exhibit A, McNeal's deposition, the defendants quote McNeal saying:  "I came to meet [Mr. Houston] through a telephone call from Mr. Houston requesting to talk to me about a project that he had in mind that he wanted to pursue."  See Exhibit A [Pl. Dep.

at 46]. "He called me and left me a message that he wanted to talk about this, and we got together. That he had [a] project that he'd been working on, that he had a relationship with Sam's or Wal-Mart, and that Wal-Mart or Sam's wanted to do some upscale pieces." Exhibit B [Complaint at 3].

The defendants say that, as the result of these discussions, McNeal prepared and delivered the eight works of art to Houston Enterprises. The defendants add that McNeal's intent was that the prints be copied, matted, framed, and sold. The defendants also say that McNeal intended that the scope of the license cover copying and distribution of the prints. This was all evident, say defendants, from McNeal's conduct. Defendants say that McNeal communicated with Houston Enterprises during the process of getting the prints ready for distribution to China for framing. The only unresolved issue at this time say defendants, was the price per print to be paid to McNeal. Otherwise, according to McNeal's deposition at page 146, McNeal was not involved in Houston Enterprises' negotiations with retail stores and did not want to be. All of this conduct on McNeal's part, say defendants, gave rise to an implied license.

## DISCRETE TRANSACTION

Defendants also contend that their relationship with McNeal was a "discrete transaction." The defendants have cited a Fourth Circuit case, *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 516 (4th Cir. 2002), which states that when evaluating whether a copyright owner intended to grant a license, the court looks to determine, "whether the parties were engaged in a short-term 'discrete transaction' as opposed to an ongoing relationship, ...,  whether the creator utilized written contracts, ..., providing that copyrighted materials could only be used with the creator's

6

future involvement or express permission, ...,  and whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible."   According to the defendants, all this fits here, and indicates McNeal's intent to grant a license.

## LACK OF WRITTEN CONTRACT

The defendants contend that McNeal did not use and did not require any written contact with regard to this transaction.  So, say defendants, if the parties did not have a written agreement, their arrangement created, at best, the conveyance of a **non-exclusive license** for Houston Enterprise's use of the prints in question.  The defendants acknowledge that McNeal sent a letter to Houston Enterprises in January of 2005, which contained provisions requiring McNeal's permission for certain uses of the prints;  however, say defendants, this letter came only after the license had been granted orally, was not signed by defendants, and did not commemorate the terms of the original agreement.  Moreover, the defendants say the grant of a non-exclusive license in this case was not conditioned upon the creation of a written agreement.

## GRANT OF NON-EXCLUSIVE LICENSE PRECLUDES CLAIM
## FOR COPYRIGHT INFRINGEMENT

If a non-exclusive license has been granted, say defendants, then the plaintiff has no copyright infringement claim.  *Carson*, 344 F.3d, at 451.  Any breach of the agreement in this case, say defendants, amounts only to a claim based on contractual obligation, and does not constitute infringement.  *See United States Naval Institute v. Charter Communications, Inc.,* 936 F.2d 692, 695 (2nd Cir. 1991), holding that where defendant misused the license, this constituted breach, not infringement.  The

7

defendants also cite authority from outside the Fifth Circuit stating that copyright infringement can be claimed only if the defendant's use of the license exceeds the scope of the license granted.  The defendants deny that McNeal had a right to rescind the non-exclusive license, but, even if she had such a right, defendants note that McNeal took no action to rescind, and, even if she had, the defendants could only be liable for copyright infringement if they continued to use the license after it was rescinded.  The defendants rely on cases from the Second and Ninth Circuits for this argument.

## THE FIRST SALE DOCTRINE

McNeal's  copyright infringement claims should be dismissed, say defendants, because, under § 109(a) of the Copyright Act, "the owner of a particular copy [of the copyrighted work] lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy."  Title 17 U.S.C. § 109(a).  The defendants say they owned the prints in question.  The defendants refer to McNeal's deposition where she admits that Houston Enterprises owned 24,000 prints.

Section 109(a), defendants note, is a codification of the **first sale doctrine** which distinguishes between ownership of a material object and ownership of a copyright.  *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154 (3d Cir. 1984).  The first sale doctrine, say defendants, holds that a copyright owner's exclusive right to distribution extends only to the first sale of that particular copy. *American International Pictures v. Foreman*, 576 F.2d 661, 663-64 (5th Cir. 1978).

8

After the first sale of the first copy, the copyright holder's ability to control copies placed in the stream of commerce ceases.  *Id.*   Once again, say defendants,  if any breach has occurred, then the claim must be for breach, not for infringement.

### THE TRADEMARK INFRINGEMENT, DILUTION, AND UNFAIR TRADE PRACTICES CLAIMS

The defendants argue that the non-exclusive license granted by McNeal includes the right to use McNeal's name in connection with selling the prints. Additionally, the defendants contend that McNeal did not have a registered trademark at the time of the alleged infringement, so, she may recover only under state common law, not federal law.

To prove trademark infringement, the defendants say McNeal must demonstrate that the defendants used her trademark, without her consent, in a manner likely to cause confusion with regard to ownership of the trademark. Therefore, the existence of a license to use the trademark constitutes consent and precludes an action for trademark infringement.

Defendants say that such a license does not have to be in writing.  In fact, "the entire course of conduct between a . . . trademark owner and an accused infringer may create an implied license" to use the trademark.  *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1076 (5th Cir. 1997).

Next, the defendants argue that McNeal cannot succeed on an unfair trade practice claim.  In order to do so, say defendants, McNeal would have to show that the defendants' actions were likely to mislead customers into thinking that the prints emanated from or were endorsed by her.  *HBO, Inc. v. Corinth Motel, Inc.*, 647

9

F.Supp. 1186 (N.D. Miss. 1986).  Five elements must be established:  (1) A false or misleading statement of fact about a product;  (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;  (3) The deception was material, in that it is likely to influence the consumer's purchasing decision;  (4) The product is in interstate commerce;  and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue." *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir.  2002) (citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir.2000)).

The defendants say they did not mislead because McNeal endorsed the prints; she and her agent approved the printing, matting, and framing of the prints, as well as the displays to be used in stores and the artist biography to be attached to the frames. Therefore, conclude defendants, since McNeal cannot prove, and has not pleaded, the required elements of an unfair competition claim, her cause of action should be dismissed with prejudice.

Defendants next argue that they did not dilute nor weaken McNeal's trademark. According to the defendants, McNeal has offered no evidence that she owned a famous mark;  or any use of the mark by the defendants;  or any actual dilution of the distinctive quality of the mark.  *Haas Outdoors, Inc. v. Oak Country Camo., Inc.*, 957 F.Supp. 835, 837-838 (N.D. Miss. 1997).

## NO MISAPPROPRIATION OF RIGHT OF PUBLICITY CLAIM

Defendants note that count three of McNeal's complaint alleges misappropriation of the right of publicity based on Houston Enterprises' reproduction,

manufacture, distribution, and sale of the prints to the public.  The defendants argue

that this claim is preempted by the Copyright Act, as the rights McNeal seeks to

protect are equivalent to those within the scope of the Copyright Act.  Additionally,

says defendants, the implied license granted to the defendants allowed them to sell

the prints under McNeal's name and did not constitute misappropriation of her right of

publicity.  Defendants say they are entitled to summary judgment as to this count.

### THE INDIVIDUAL CLAIMS AGAINST JOE DENSON

Defendants argue that these claims must be dismissed because directors and

officers may not be held liable based solely on a theory of control of the corporate

entity charged with infringement."  The defendants cite a string of unreported cases

and one Mississippi district court case on this point.   *Entral Group Intern., LLC v.

Honey Café on 5th, Inc.*, 2006 WL 3694584, at *5 (E.D.N.Y. 2006) (quoting *Shady

Records, Inc. v. Source Enters., Inc.*, 2005 WL 14920, at *23 (S.D.N.Y. Jan.3, 2005));

and *South Miss. Planning & Development Dist., Inc. v. Robertson*, 660 F.Supp. 1057

(S.D. Miss.).

Defendants submit that in order for Joe Denson to be held individually liable,

McNeal must be able to demonstrate that Denson either had "the right and ability to

supervise infringing activity and . . . a financial interest in that activity," or "personally

[participated] in that activity."  *Entral Group Intern., LLC*.  Defendants refer to Joe

Denson's deposition where he says that he was not a part of any discussions between

Robert Houston and McNeal when they were trying to put the deal together;  that he

had no personal knowledge of conversations between Robert Houston and McNeal,

and that he had never seen any written agreement between McNeal and Houston Enterprises.  Exhibit C [J. Denson Dep. at 24-25].  Denson says he did not know the details of any  agreement between McNeal and Houston Enterprises and did not consider it to be any of his business.  Exhiibit C [J. Denson Dep. at 27].  Denson says his only communication with McNeal  occurred when he responded to some of her emails while Robert Houston was out of the country, and that he spoke to McNeal for the first time at her deposition.  Exhibit C [J. Denson Dep. at 27].

Denson acknowledges that he was involved with arranging the shipment of the prints to China, and that he had conversations with Carla Wall, McNeal's agent. Denson says he also had limited involvement in putting together the display box for the prints and had various conversations with McNeal and Sam's East regarding the displays and the framing of the prints.  Denson also argues that McNeal makes no claim that any of these actions constituted any copyright or trademark infringement. So, the defendants ask that any such claims against Denson be dismissed.

**THE MOTION OF BIG LOTS FOR SUMMARY JUDGMENT**
**THE FIRST SALE DOCTRINE**

The Big Lots defendants argue, just as the Houston Enterprises defendants have argued in their motion, that McNeal's claim for copyright infringement fails based on the "first sale" doctrine of Title 17 U.S.C. § 109(a), which provides that, "[n]otwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."  So, says the Big Lots defendants, where the copyright owner

12

sells or transfers a particular copy of his copyrighted work, he divests himself of the exclusive right in that copy and the right to sell passes to the transferee.

To trigger the first sale doctrine, the copyright owner must 'part [ ] with title to [the] particular copy.'" *Walt Disney Productions v. Basmajian*, 600 F. Supp. 439, 442 (D.N.Y. 1984);  *American Intern. Pictures, Inc. v. Foreman*, 576 F.2d 661, 663-64 (5th Cir. 1978);  *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1002 (S.D. Tex. 2000).  The first-sale doctrine is premised on the notion that "[o]nce the copyright owner has voluntarily released his work to the public, the distribution right is no longer needed to protect the underlying copyright; at that point, the policy favoring a copyright monopoly for authors gives way to policies disfavoring restraints of trade and limitations on the alienation of personal property, and the first sale doctrine takes effect." *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F.Supp. 1378, 1388 (C.D. Cal. 1993).  Section 109(a) distinguishes between two individuals: the copyright owner and the owner of a particular copy which was lawfully made. *United States v. Smith*, 686 F.2d 234, 240 (5th Cir. 1982) ("a 'copyright', together with the exclusive rights and privileges associated with the copyright, does not implicate any tangible embodiment of the work. Additionally, ownership of a copyright does not encompass ownership of the words, sounds, pictures, or images embodied in the tangible object. In other words, a copyright is independent of both its physical manifestation and the very thing that is copyrighted.").

So, the Big Lots defendants say this court should consider who was the owner of the prints and who was the copyright owner of the images from which the prints were made.   Referring to McNeal's deposition testimony, the Big Lots defendants

13

state that McNeal has acknowledged ownership of the copyright, and has admitted that the prints belonged to Houston Enterprises.  Thus, the Big Lots defendants conclude that they cannot be liable for copyright infringement for buying the prints in question from the owner.

### NO CLAIM FOR MISAPPROPRIATION OF RIGHT OF PUBLICITY

This argument, like the argument of the Houston Enterprises defendants, contends that if there is no copyright violation, there can be no misappropriation of the right of publicity.  Works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by §§ 102 and 103 of the Copyright Act, contend the Big Lots defendants, are governed exclusively by Title 17 U.S.C. § 301(a).

Section 301(a) requires a two-step analysis.  "First, the cause of action is examined to determine if it falls 'within the subject matter of copyright.'  Secondly, the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995).  Section 102 of the Copyright Act provides copyright protection for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.  Works of authorship include the following categories: . . . (5) pictorial, graphic, and sculptural works . . . ."  17 U.S.C. § 102(a).  "The subject matter of copyright as specified by section 102 [also] includes compilations and derivative works (such as the prints in question). . . ."  17 U.S.C. § 103(a).

14

Because all of McNeal's claims relate to the paintings from which the prints were made, her claims relate to works which fall within the subject matter of copyright based on §§ 102 and 103.   So, the first prong of the analysis is satisfied.

The second prong asks whether the claims seek to protect rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106, such as the right (1) to reproduce the copyrighted work; (2) to prepare derivative works; and (3) to distribute copies to the public by sale.

The Big Lots defendants say that McNeal's claims repeatedly refer to the "reproduction and distribution" of her prints as the basis for her claims.  The Amended Complaint, say defendants, alleges that the misappropriation claim is based on the alleged wrongful reproduction, manufacturing, and distribution of the prints.  Amended Complaint, ¶ 38.  So, say the Big Lots defendants, McNeal clearly is seeking to protect rights which are equivalent to the exclusive rights found in § 106.

## THE UNFAIR TRADE PRACTICES
## AND TRADEMARK INFRINGEMENT CLAIMS

These claims, argue the Big Lots defendants, are based on McNeal's allegation of false advertising, that is, using McNeal's name in connection with the sales of the prints.  McNeal contends that her ability to market her work has been harmed and that she has lost sales of her own products.

The Big Lots defendants submit that a claim for false advertising must be supported by showing:  (1), a false or misleading statement of fact about a product;  that (2), the statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;  that (3), the deception is material, in that

it is likely to influence the consumer's purchasing decision;  that (4), the product is in interstate commerce;  and that (5), the plaintiff has been or is likely to be injured as a result of the statement at issue."  *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).  "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim."  *Id.*

The Big Lots defendants point to the agreement between McNeal and Houston Enterprises, contending that McNeal must have approved of the use of her signature "chop" on the prints as well as the inclusion of her biography or "artist tag" with the prints.  The Big Lots defendants refer to McNeal's deposition, pp. 91:23 – 92:14, where she apparently agrees that this is so.  So, say the Big Lots defendants, McNeal cannot claim a false statement of fact.

The Big Lots defendants also submit that an analysis of McNeal's claim for false advertising must focus on whether there was any misleading statement of fact relating to the sale of the prints.  *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002).  To prove the use of her name was misleading, argue the Big Lots defendants, McNeal "must demonstrate actual deception through direct evidence of consumer reaction to the advertising or evidence of consumer surveys or consumer reaction tests."  *Id.*  Thus, in order to prove actual deception, McNeal must "produce evidence of actual consumer reaction to the challenged advertising or surveys showing that a substantial number of consumers were actually misled by the advertisements."  *Pizza Hut*, 227 F.3d at 497.

Big Lots contends that McNeal alleges a false association of her name with Big Lots;  however, says Big Lots, McNeal has shown no direct evidence, expert or

otherwise, of consumers being misled about any such association.  So, say the Big

Lots defendants, McNeal cannot show any injury resulting from any alleged false

advertising.

Therefore, based on the foregoing, the Big Lots defendants ask the court for

summary judgment on McNeal's copyright infringement, trademark infringement,

unfair business practices and false advertising claims.

### McNEAL'S SUMMARY JUDGMENT MOTIONS

McNeal has moved for summary judgment on the counterclaims of the

defendants Joe Denson and Robert Houston, which are based on claims of "wrongful

and malicious joinder" of these defendants in this lawsuit.  Denson and Houston seek

attorney fees and punitive damages.  Denson and Houston also contend that

McNeal's filing of this lawsuit against Sam's East caused Denson and Houston to

suffer damages when Sam's East suspended paying money it owned to Houston

Enterprises.  McNeal says these defendants have filed their counterclaims simply to

harass McNeal and that no tort claim exists for wrongful and malicious joinder.

McNeal argues the "American Rule," that no contractual or statutory basis for

these counterclaims exists.  McNeal cites *Fleischmann Distilling Corp. V. Maier*

*Brewing Co*., 386 U.S. 714, 717-18 (1967), for the principle that one should not be

penalized for bringing one's lawsuit.  The defendants' counterclaims do not mention

Rule 11 of the Federal Rules of Civil Procedure.  This is a rule and a statute which

would permit an award of sanctions in the form of attorney fees and costs if Houston

and Denson were to prevail, provided that they gave McNeal proper notice under Rule

11 of their intent to seek sanctions.  McNeal does seek Rule 11 sanctions against

Denson and Houston for the filing of their counterclaims based on the Rule 11 justifications of harassment and the requirement that claims be warranted by existing law.

McNeal also asks for summary judgment on the counterclaim of Houston Enterprises which is based on McNeal having sued Sam's East.  Houston Enterprises says that Sam's East suspended payments it owed to Houston Enterprises (over $500,000.00) after this lawsuit was filed, that Houston Enterprises had assigned its accounts receivable at the bank, and that Houston Enterprises was damaged when Sam's East suspended its payments.  McNeal argues for summary judgment on this counterclaim in the same manner she argues for summary judgment on the counterclaims of Denson and Robert Houston.  Houston Enterprises responds that McNeal filed this lawsuit against Sam's East simply to harass Houston Enterprises.

## **RULING ON MOTIONS**

Before the court are several motions for partial summary judgment submitted by the plaintiff Sanders McNeal [**Docket Nos. 74, 76 and 78**], seeking to dispose of the counterclaims filed by the defendants Joe Denson, Robert Houston, and Houston Enterprises, Inc.  The plaintiff's motions against Joe Denson and Robert Houston are submitted on the same grounds, that the counterclaims of these defendants are based on malicious prosecution under Mississippi law.

The elements of the tort of malicious prosecution under Mississippi law are: (1) the institution of a proceeding (2) by, or at the insistence of the defendant (3) the termination of such proceedings in the plaintiff's favor (4) malice in instituting the

18

proceedings (5) want of probable cause for the proceedings and (6) the suffering of injury or damage as a result of the prosecution.  *McClinton v. Delta Pride Catfish, Inc.*, 792 So.2d 968, 973 (Miss. 2001).  All six of these elements must be proven by a preponderance of the evidence. *Van v. Grand Casinos of Mississippi, Inc.*, 724 So.2d 889, 891 (Miss. 1998).  Inasmuch as the parties agree that neither Denson's nor Houston's individual counterclaims can establish the third element of a malicious prosecution claim, namely, that there has been a termination of proceedings in their favor, these claims are dismissed.  The plaintiff's motions for summary judgment on these claims [**Docket Nos. 74 & 76**] are terminated as moot.

The plaintiff also asks for summary judgment on the counterclaim of Houston Enterprises. Inc., which is based on the plaintiff having sued the defendant Sam's East, Inc., with whom she now has settled her claim.  Houston Enterprises says that Sam's East suspended payments it owed to Houston Enterprises (over $500,000.00) after this lawsuit was filed, that Houston Enterprises had assigned its accounts receivable at the bank, and that Houston Enterprises was damaged when Sam's East suspended its payments.  Houston Enterprises' counterclaim is for tortious interference with its contract and its business relations with Sam's East. Houston Enterprises also argues that the plaintiff filed this lawsuit against Sam's East simply to harass Houston Enterprises.  This court finds that there are genuine issues of material fact regarding this matter and the plaintiff's motion for summary judgment on the counterclaims of Houston Enterprises, Inc. [**Docket No. 78**], is denied.

19

Next, also before the court are the motions for summary judgment filed by the defendants Big Lots, Inc., and Houston Enterprises, Inc. [**Docket Nos. 80 and 82**]. This court has heard the arguments and reviewed the exhibits offered by the parties on the issues raised and concludes that genuine issues of material fact are present which require resolution of this dispute at trial.  Thus, these motions for summary judgment are denied.

More recently, the defendants Joe Denson, Robert Houston and Houston Enterprises, filed a supplemental motion for summary judgment [**Docket No. 97**] which argues that the plaintiff can assert no facts which would entitle her to a judgment and damages.  This court hereby denies this supplemental motion for the same reason it denied the motions for summary judgment offered by Big Lots, Inc., and Houston Enterprises.

The motion of the defendants Joe Denson, Robert Houston and Houston Enterprises to be permitted to submit excess pages [**Docket No. 96**] is granted.

Next, Houston Enterprises has submitted its motion seeking to reopen discovery **[Docket # 100]**, referring specifically to its Request No. 14 of its First Set of Requests for Production wherein Houston Enterprises asks the plaintiff McNeal to produce her individual income tax records for the past five years.  McNeal has responded to this request as being overly broad and burdensome.  Houston Enterprises insists that McNeal's income tax records are a necessary part of her damage claims.  McNeal's prayers for relief, says Houston Enterprises, asserts that McNeal "has lost sales of her own products."  So, says Houston Enterprises, in order

to know whether McNeal has "lost sales" and whether there was any affect on her income, Houston Enterprises should be granted access to at least this portion of McNeal's financial records.

This court will allow additional discovery on this issue, limited to any financial information directly related to McNeal's claim of lost sales.[2]  The parties are to contact the United States Magistrate Judge and obtain a new Scheduling Order for this and any other needed discovery which may have been delayed while the dispositive motions were being considered, plus a new date for a pretrial conference and for trial of this matter.

Finally, on August 7, 2007, Houston Enterprises moved to continue the trial of this matter which was set for September 4, 2007, **[Docket # 103]**, because the plaintiff had not provided sufficient discovery on the issue of copyright infringement.  Inasmuch as the court now has directed the parties to proceed to the United States Magistrate for a new Scheduling Order on discovery, this motion is terminated as moot.

**SO ORDERED**, this the 12th day of March, 2008.

**s/ HENRY T. WINGATE**
  **CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:06cv315-HTW-LRA
Order

---

[2]Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party [.]" The information sought need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  See Rule 26(b)(1).